UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal No: 11-51-GFVT |
| | ) | |
| V. | ) | |
| | ) | **MEMORANDUM OPINION** |
| ROBERT JASON CHAPMAN, et al., | ) | **&** |
| | ) | **ORDER** |
| Defendants. | ) | |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

If you try to resell a stolen motorcycle you had better be clever. The reason is that over the years manufacturers, in coordination with government regulations, have devised a number of ways to trace a motorcycle to its rightful owner. Some techniques are obvious; others are not.

The Defendants here are alleged to be motorcycle thieves.[1] To assist the United States in the case against them, it seeks to admit the testimony of Peter J. Simet, Robert Kenney, and Robert Riley, as experts in the business of identifying stolen motorcycles.

Challenges to the admission of this testimony first arose in Defendant Mark Justice's Motion *in Limine* to Exclude the Testimony of Peter Simet and to Disallow the United States' Effort to Reduce the Scope of Cross-Examination Otherwise Permitted to the Defendant. [R. 245.] Justice essentially argues that calling Simet as an expert is unfair because he will testify to the existence of confidential vehicle identification numbers that were used to identify allegedly stolen motorcycle parts without revealing

---

[1] Defendants are charged with conspiring to illegally transport and sell stolen motorcycles and motorcycle parts across state lines, and money laundering in violation of 18 U.S.C. §§ 1956(a)(1)(b)(i) and 1956(h). [R. 157-1.]

1

the location of those VINs. [*See generally* R. 245.] Defendants George Ferguson and Richard Meade joined that motion. [R. 255; R. 259.]

Then, Defendant John Slusher, in his Motion *in Limine* to Exclude Testimony at Trial of Any Information Relating to Stolen Motorcycles, broadened the scope of the challenge, asking the Court to conduct "a hearing in conformity with *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), to assess the reliability of the proposed expert testimony" of Simet, Kenney, and Riley. [*See* R. 267, at 1.] Defendant Robert Jason Chapman requested the same relief in his Motion *in Limine*, [R. 269] and several of the remaining Defendants joined in his motion. [R. 296, R. 298, R. 306, R. 313, R. 315, R. 316.] [2] In the final analysis, the testimony of Messrs. Simet, Kenney, and Riley is reliable and helpful. For the reasons below, the motions as they relate to this issue will be DENIED.

## I.

### A.

Simet, Kenney, and Riley's testimony is similar. First, they will explain how stolen motorcycles are altered or obscured making it difficult to identify the original manufacturer. [R. 232-1; R. 245, Exhibit 1; R. 269-2.] Second, they will describe the process Harley-Davidson and other motorcycle companies use to identify their motorcycles and motorcycle parts, and how that information can be used to discover the true identity of a motorcycle even after several forms of identification have been obscured or altered. [R. 232-1; R. 245, Exhibit 1; R. 269-2.] They will explain that the

---

[2] Without any objection from the United States, the Daubert Hearing commenced on September 25, 2012. [R. 337.] Over three days, the government presented the proposed testimony of Simet, Kenney, and Riley [R. 337; R. 338; R. 346.] At the conclusion of their testimony, the United States and Defendants were given an opportunity to state why they stood either opposed or in favor of admitting the expert testimony at trial. [R. 346.]

2

process includes placing VINs on bike parts, some of which are visible to the human eye, while others are confidential and can only be detected and identified by persons with the requisite knowledge. [R. 232-1; R. 245, exhibit 1; R. 269-2.] Once those VINs are identified, they can be matched against records Harley-Davidson maintains to trace the parts and motorcycles it manufactures. [R. 232-1; R. 245, exhibit 1; R. 269-2.] Finally, based on this intricate knowledge, Simet, Kenney, and Riley will provide opinion and analysis as to whether the motorcycles were indeed stolen. [R. 232-1, at 7, R. 245, Exhibit 1.]

Collectively, Defendants contend that the methodology relied on by Simet, Kenney, and Riley, matching the confidential VINs against Harley-Davidson's records, may be flawed, and that without proper cross-examination they have no way to confirm its reliability. They also call into question the qualifications of all three men. Nevertheless, despite Defendants' best efforts to persuade the Court to find differently, the experts' proffered testimony is deemed admissible.

## B.

The admissibility of expert testimony is governed by Federal Rule of Evidence 702. The rule states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. From Rule 702 comes a "two part test for admitting expert testimony: (1) is the expert qualified and the testimony reliable; and (2) is the evidence relevant and

helpful to the trier of fact." *U.S. v. Jones,* 107 F.3d 1147, 1156 (6th Cir.1997); *Reynolds v. Freightliner LLC*, 2006 WL 5249744 (E.D. Ky, June 21, 2006).

The seminal case applying Rule 702 is *Daubert*. There, the Supreme Court explained that implicit in the rule is a district courts' gatekeeping responsibility, "ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Id.* at 597. Further, the Supreme Court listed several specific factors to help determine the reliability of expert testimony based on scientific knowledge. *Id.* at 590, n. 8. "These factors include: [w]hether a 'theory or technique . . . can be (and has been) tested' . . . 'has [it] been subjected to peer review and publication'", is there a "high 'known or potential rate of error'", are there "'standards controlling the techniques operation'" and is the theory or technique generally accepted within the scientific community. *Id.* at 592-94.

In *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147-151 (1999), the Supreme Court determined that the factors and the gatekeeping obligation established in *Daubert* apply equally to non-scientific experts. However, those factors are not definitive, and district courts "must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Id.* at 152.

Moreover, "the court's gatekeeper role under *Daubert* 'is not intended to supplant the adversary system or the role of the jury.'" *In re Air Crash at Lexington, Kentucky, August 27, 2006*, 2008 WL 2954973, *2 (E.D. Ky., July 30, 2008) (citing *Allison v. McGhan¸* 184 F.3d 1300, 1311 (11th Cir. 1999)). Instead, "'[v]igourous cross-examination, presentation of contrary evidence, and careful instruction on the burden of

4

proof are the traditional and appropriate means of attacking [debatable] but admissible evidence.'" *Id.* (citing *Daubert*, 509 U.S. at 596).

The Government has "[t]he burden of establishing reliability…" of the proffered expert testimony. *See Freightliner*, 2006 WL at * 9 (citing *Nelson v. Tennessee Gas Pipeline Co.*, 243 F.3d 244, 251 (6th Cir. 2001)). The district court's role is to "determine whether the principles and methodology underlying the testimony itself are valid." *See Pride v. BIC Corp.*, 218 F.3d 566, 577 (6th Cir. 2000). Here, the United States has met its burden.

## II.

### A.

First, will the expert testimony be reliable? Simet, Kenney, and Riley plan to explain how altering motorcycle and motorcycle part VINs increases the difficulty of detecting whether a motorcycle has been stolen. As explained below, these techniques are reliable.

Simet, Kenney, and Riley's proffered testimony is not based upon scientific evidence, is not subject to peer review, and is not based upon tests or studies. They are not traditional scientific experts, but are instead experts falling into the "other specialized knowledge" category. Fed. R. Evid. 702(a). A specialized knowledge witness qualifies as an expert witness "[s]o long as the testimony content is relevant and the method by which the specialized testimony developed is reliable…" *U.S. v. Lawson*, 2009 WL 1208014, *4 (E.D. Ky, May 1, 2009) (citing *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994)). "Reliability in specialized knowledge testimony is indicated by testing the theory or technique and applying any other relevant *Daubert* factors." *Id.* (citing

5

*Berry*, 25 F.3d at 1351). "When a witness presents information that is outside the working knowledge of an average lay person, then the need for an expert exists." *Id.* (citing *U.S. v. White*, 492 F.3d 380, 403 (6th Cir. 2007).

Specialized knowledge accrued through experience suffices to establish expertise. *Berry*, 25 F.3d at 1349-50; *Lawson*, 2009 WL at * 4.  "In the Eastern District of Kentucky, a range of relevant factors have been identified regarding the qualification of specialized knowledge experts.  Relevant factors include the proffered expert's knowledge of an industry and knowledge of an industry's common practices, in addition to the expert's demonstrated relevant experience, training, and education." *Id.* (citing *Oaks v. Wiley Sanders Truck Lines, Inc.,* 2008 WL 4180267, at *3 (E.D.Ky.2008)).

Simet, Kenney, and Riley have intricate knowledge pertaining to auto theft and vehicle identification shaped and developed by years of experience.  Simet currently works for Harley-Davidson as a Market Compliance and Vehicle Specialist. [R. 245; Government Exhibit 1.]  Since 1986, he has published a Harley-Davidson Motorcycle Identification Manual annually. [*Id.*]  Additionally, Simet has testified as an expert witness in other motorcycle cases, and has taught Harley-Davidson identification courses at the FBI Academy in Quantico, Virginia, and at various Auto Theft and Gang Investigation Seminars in the United States, Australia, and Canada. [*Id.*]

Kenney is a Connecticut State Police officer and is a certified instructor in the "Motorcycle Identification and Auto Theft" field. [R. 232-1; Government Exhibit 4.]  He has taught in several venues including "the FBI academy in Quantico, Virginia", "[four] Canadian Provinces", and in "Australia and Europe." [*Id.*]  He began his study of Harley-

Davidson motorcycles in 1978, and over the years has "produced Confidential Manuals for Law Enforcement titled 'The Identification of Harley-Davidson Motorcycles'". [*Id.*]

Riley, former detective with the Kentucky State Police, has extensive experience with vehicle identification. He has been recognized in both state and federal courts as an expert witness in stolen vehicles. [R. 269-2, at 4.] Further, he has taught at several auto theft detection and identification classes, and has been certified as an instructor in auto theft detection and identification by the International Association of Auto Theft Investigators. [*Id.* at 4-5.]

Their knowledge, built by years of teaching, training, and education, allows them to explain in great depths the techniques utilized to complicate and obscure motorcycle and motorcycle part identification. The Court, in its gatekeeping capacity, is confident that because of their years of experience in vehicle identification, their testimony as to the alteration process is reliable. *See U.S. v. Jones*, 107 F.3d 1147, 1160 (6th Cir. 1997) (citing Edward J. Imwinkelried, *The Next Step After* Daubert: *Developing a Similarly Epistemological Approach to Ensuring the Reliability of Nonscientific Expert Testimony,* 15 Cardozo L. Rev. 2271, 2292-92 (1994) (explaining that non-scientific expert testimony increases with the more experiences an expert has had and the similarity of those experiences to the expert's testimony).

Once Simet, Kenney, and Riley have observed that a motorcycle has been altered to mask its identity, they rely on certain methods based on their special knowledge to determine whether it has been stolen. These methods include looking for distinguishing characteristics unique to a particular motorcycle, recognizing that the VINs are outdated or illegitimate, and locating confidential VINs, and matching those numbers against

records kept by motorcycle companies for identification of all their parts. [R. 232-1; R. 245, Exhibit 1; R. 269-2.]

Defendants expressed specific concern that because they did not have access to the confidential VINs there was no way to effectively challenge the reliability of the identification method. [*See* October 3, 2012, Hearing Transcript.] For example, they allege that without that information they are unable to test the error rate of the process. They also reserved separate criticism for Riley and his qualifications. From their perspective, he merely serves as an intermediary between the KSP, Simet, and Kenney. [*See* October 3, 2012, Hearing Transcript.] According to counsel for Defendant Christina Bannigan, Riley's testimony was solely about the investigation process. [*See* October 3, 2012, Hearing Transcript.]

For purposes of this analysis, Defendants access to the confidential VINs is not a true cause for concern. Rule 702 gives district courts, not the parties to the litigation, the ultimate say as to whether a potential witness may testify as an expert. *See Daubert*, 509 U.S. at 593; *see also Kumho Tire Co.*, 526 U.S. at 148-151. How a court proceeds as to this question is a matter left to its discretion. "[R]easonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine." *Kumho Tire Co.*, 526 U.S. at 153 (citing *General Electric Co. v. Joiner*, 522 U.S. 136, 143 (1997)); *see also Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 295 (6th Cir. 2007).

Furthermore, reliability, here, as to this specific method of identification, should not be measured by whether the methodology is error-proof. Common sense requires drawing the conclusion that if the confidential VINs exist, then the methodology must be

8

reliable. As has been explained in another circuit, "[t]he purpose of marking motor vehicles with confidential VINs is to enable law enforcement agents to identify stolen vehicles even if the criminals have attempted to conceal their crime by obliterating or removing the VINs they discover on the car." *United States v. Short*, 4 F.3d 475, 480-81 (7th Cir. 1993). The chance that Harley-Davidson creates a system of tracking its motorcycles and parts that is inherently flawed is unlikely. In fact, the reliability of the methodology is bolstered by the confidentiality. Harley-Davidson's efforts to limit access to these confidential VINs ensures that when they are matched against its internal records, there is a level of certainty that those records correctly identify Harley-Davidson parts.

Moreover, Simet, Kenney, and Riley, are not experts merely because they have access to this one resource. The use of confidential VINs either supplements or confirms their conclusions, but it does not account for all their knowledge. They rely primarily on their years of experience to observe whether a vehicle has been altered or obscured to hide its true identity. Testimony relying on this basis satisfies the analysis. *See First Tennessee Bank National Association v. Barreto*, 268 F.3d 319, 333 (6th Cir. 2001); *U.S. v. Poulsen*, 543 F.Supp.2d 809, 811 (S.D. Ohio 2008) (explaining that "experience-based testimony satisfies *Daubert's* reliability requirements."); *see also* Fed. R. Evid. 702 advisory comm. note (2000 amendment).

The Court does, however, recognize the potential for confusion if any of the three witnesses testifies to facts learned during the course of investigation in addition to any expert testimony. It is not unusual for law enforcement officers to testify as experts and fact witnesses, but such testimony "should be carefully circumscribed to ensure that the

expert does not usurp either the role of the judge in instructing on the law, or the role of the jury in applying the law to the facts before it." *U.S. v. Morales*, 474 Fed.Appx. 30, 33 (2nd Cir. 2012) (quoting *United States v. Mejia,* 545 F.3d 179, 192 (2d Cir.2008)).

**B.**

Next, if reliable, is the testimony helpful or relevant? To be relevant, the testimony must help the jury understand the evidence or determine a fact at issue. *Daubert*, 509 U.S. at 591; *Freightliner*, 2006 WL at * 10. This inquiry requires a determination of whether the expert testimony adequately connects to the facts in such a way "that it will aid the jury in resolving the issues at hand or understanding the evidence presented." *Id.*

It is clear from the Hearing, that the proposed testimony of Simet, Kenney, and Riley will assist the jury. Defendant's guilt or innocence hinges on whether they conspired to illegally transport and transfer ownership of stolen motorcycles. As experts, Simet, Kenney, and Riley will shed valuable light on the techniques used to alter motorcycles to obscure their true identity, and explain the methods used to uncover their true identity. Consequently, this testimony is relevant, and helpful to the trier of fact.[3]

**III.**

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** that the following motions will be **DENIED**: R. 245, R. 255, R. 259, R. 267, R. 269, R. 296, R. 298, R. 306, R. 313, and the remaining motions, R. 315 and R. 316, will be **DENIED in part**.

---

[3] Concluding that Simet, Kenney, and Riley's expert testimony will be admissible for trial does not in any way resolve the question of whether the confidential VINs will be available to the Defendants to effectively cross-examine them at trial. That issue, which has been raised by the parties and is currently pending before this Court, will be addressed separately.

This 3rd day of December, 2012.



Signed By:
*Gregory F. Van Tatenhove*
United States District Judge