UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | Criminal No: 11-51-GFVT |
| V. | ) | |
| MARK JUSTICE, | ) | **MEMORANDUM OPINION & ORDER** |
| GEORGE FERGUSON, and | ) | |
| RICHARD D. MEADE, | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Not every trial includes a day of testimony during which seven motorcycles are brought into the courthouse as visual aids.  Not every criminal trial includes issues that compel the Court to issue an in-trial memorandum opinion and order either.  The ongoing trial in this matter is unique.

Two matters are pending before the Court, having been raised by Defendants during trial.  The first is a motion for mistrial based on juror bias.  Defendants point to two incidents as nurturing prejudice and spoiling Defendants' chance for a fair verdict.  Defendants' second motion for mistrial relates to the Court granting the United States' admission into evidence, in the face of objections by Defendants, of a substantial number of police reports regarding stolen motorcycles.

**I**

Granting a mistrial requires a finding that, "taking all the circumstances into consideration, there is a manifest necessity for doing so." *Renico v. Lett*, 130 S.Ct. 1855, 1863 (2010) (quoting *United States v. Perez*, 22 U.S. 579, 580 (1824)). A court's decision to grant a mistrial is due significant deference, but courts are cautioned that this "power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes." *Id*. (quoting *Perez*, 22 U.S. at 580).

Defendants desire to use the blunt tool of a mistrial for purported juror bias, but a sharper, more precise instrument is necessary when operating in this area of the law. For example, before the issue of granting a mistrial is even considered for juror bias, the two identified juror issues need to be categorized as extraneous or internal influences. Both happen to be present in this case, and that distinction is important.

An extraneous influence has been defined as "one derived from specific knowledge about or a relationship with either the parties or their witnesses." *United States v. Owens*, 426 F.3d 800, 805 (6th Cir. 2005) (quoting *United States v. Herndon*, 156 F.3d 629, 635 (6th Cir. 1998)). *Owens* cites several examples, one being prior business transactions between a juror and a defendant that were not disclosed during voir dire. *Id*. (describing the facts of *Herndon*, 156 F.3d at 632-33). Numerous other examples are cited in *United States v. Blackwell*, 2005 WL 3440880, at *5 (S.D. Ohio Dec. 14, 2005), in addition to further elucidation of this concept: "[a]n outside influence refers to a factor originating outside of normal courtroom proceedings which influences jury deliberations." *Id*. (citing *United States v. Jones*, 132 F.3d 232, 245 (5th Cir. 1998)).

However, the Sixth Circuit has been careful to note that "not all communications with jurors warrant a hearing for a determination of potential bias." *United States v. Frost*, 125 F.3d 346, 377 (6th Cir. 1997) (quoting *United States v. Rigsby*, 45 F.3d 120, 123 (6th Cir. 1995)). "Instead, an allegation of an unauthorized communication with a juror requires a *Remmer* [*v. United States*, 347 U.S. 227 (1954),] hearing only when the alleged contact presents a likelihood of affecting the verdict." *Frost*, 125 F.3d at 377 (quoting *Rigsby*, 45 F.3d at 123). "Intentional improper contacts" require a hearing. *Id*. And contacts that have "an obvious potential for improperly influencing the jury" obligate a court to hold a *Remmer* hearing. But an unintentional contact does not per se justify court intervention. *Id*.

When a "colorable claim of extraneous influence that presents a likelihood of affecting the verdict" has been put forth by the defense, a court is required to conduct a hearing consistent with the Supreme Court's opinion in *Remmer v. United States*, 347 U.S. 227, 230 (1954). *United States v. Gonzales*, 227 F.3d 520, 527 (6th Cir. 2000) (internal quotation marks omitted) (quoting *Frost*, 125 F.3d at 377); *see also Owens*, 426 F.3d at 805. At that hearing, the outside contact is not presumed to be prejudicial; "the defendant bears the burden of proving actual juror bias"; and "juror testimony [at the hearing] is not inherently suspect." *Herndon*, 156 F.3d at 636 (quoting *United States v. Zelinka*, 862 F.2d 92, 95-96 (6th Cir. 1988)). Only after all those conditions are satisfied is a defendant entitled to a remedy.

The unintentional out-of-court interaction in this case took place in a parking lot near the courthouse that is used by visitors. Available parking near the courthouse can be challenging to find, and this is especially true in a trial containing three defendants—none

3

of whom are incarcerated—and their attorneys, the United States' attorneys, and the jury, plus any other individuals who have business at the courthouse. During the second week of this trial, more than one juror reported to a court security officer (CSO) that they felt uncomfortable walking to their cars the previous night. The reason for the jurors discomfort was that Defendants parked their cars near where the jurors parked their cars. Defendants had not communicated with jurors through verbal or non-verbal means. No juror reported having been contacted by anyone on that particular night, in the parking lot or otherwise. Furthermore, no juror intimated to the CSO that this caused them to doubt they could impartially consider this case.

This is the prototypical factual circumstance that fits in the exception identified above. There is no allegation that any intentional contact took place. And so the Court is left to determine whether the contact has "an obvious potential for improperly influencing the jury." And the answer is no.

It is perfectly normal that jurors might feel some level of trepidation about walking to a parking lot at night; this is a fairly common occurrence amongst all people, and heightened awareness in such a situation is prudent. Moreover, it seems natural that jurors sitting in judgment over a defendant would prefer not to see that party outside the structured confines of the courtroom. Nevertheless, jurors' understandable preference for not seeing a defendant outside of court does not mean that when that preference goes unrealized, unfair influence follows. This sort of de minimis unintentional contact is well below the threshold at which a court should hold a hearing. Consequently, not only is a mistrial inappropriate, even holding a *Remmer* hearing is unnecessary.

The second incident Defendants have cited as justification for a mistrial is almost perfectly aligned with a Sixth Circuit case reaching the opposite conclusion. In *Owens*, 426 F.3d at 804-05, a juror sent a note to the presiding judge stating that she felt uncomfortable because she perceived that the defendant was "staring at her." *Id*. at 804. Defendant's counsel asked the court to inquire into whether this experience had biased the juror. *Id*. That request was refused, but the judge did instruct the jury that the defendant "did not present a danger." *Id.*

In examining this issue on appeal, the Sixth Circuit first resolved whether this constituted extraneous influence. *Id*. at 805. The court found it did not. *Id*. "When a defendant stares at a juror during the course of his trial, . . . he has introduced no outside contact with, nor special information about, a party or witness." *Id*. The Sixth Circuit bolstered their conclusion by citing a Third Circuit case wherein the court reached a similar conclusion. *Id*. (citing *United States v. Lopez*, 271 F.3d 472 (3rd Cir. 2001)). Another Sixth Circuit case was also cited for the proposition that when a "defendant's own conduct during the course of trial [is] the source of the implied bias," a *Remmer* hearing is unnecessary. *Id*. (citing *United States v. Reesor*, 2001 WL 523931, at *6 (6th Cir. May 7, 2001)). "To hold otherwise . . . is to create incentives for a defendant to make his or her jury uncomfortable." *Id*.

In this case, during the first week of trial, one juror, in the presence of other jurors (and perhaps all of them), approached a CSO while the trial was on a short recess. The juror expressed a belief that Defendant Justice was staring at the jury and this made that juror uncomfortable. As the CSO listened to the juror's complaint, several other jurors expressed similar sentiment. The CSO immediately brought this to the Court's attention,

5

and before trial resumed, the parties, via counsel, were notified about the jurors perspectives at a bench conference. The jury was not in the courtroom when the bench conference was held. The parties did not request any relief at that time, and the Court noted that it had not noticed any inappropriate staring.

Several days later, Defendants made an oral motion for a mistrial based on the jurors' impression.[1] Defendants did not cite any law in support of their motion, though Defendant Justice's counsel noted a curative step that might be acceptable would be dismissing the first juror who raised this issue. In light of the foregoing discussion, even that is unnecessary under the Sixth Circuit's unambiguous guidance. Consequently, the motion for a mistrial on the basis of juror bias is denied.

## II

Declaring a mistrial on the basis of improperly admitted evidence is an extraordinary remedy. The threshold that must be crossed in justifying such a decision is that the evidence "render[s] the trial unfair." *United States v. Reesor*, 10 F. App'x 297, 304 (6th Cir. 2001). In greater detail, "[o]nly if the erroneously admitted evidence is of an exceptionally prejudicial character, such that its withdrawal from consideration by the jury cannot be expected to remove the harm, will it be appropriate to grant a new trial." *Id*. (quoting *United States v. Carr*, 5 F.3d 986, 993 (6th Cir.1993)).

During the testimony of Sergeant Kenney and Detective Riley, the government has sought the introduction of several police reports. The introduction of these reports into evidence as exhibits has met continued objections from counsel for Defendants. They now assert that a mistrial is appropriate arguing that the police reports are hearsay and have been improperly admitted. Further, they claim that they have not been properly

---

[1] The Court had continued to monitor Defendants and still did not perceive any inappropriate conduct.

6

authenticated. Because the Court is not convinced by either argument, a mistrial is not appropriate.

First, the police reports are not inadmissible hearsay. *United States v. Graham*, 391 F.2d 439, 447 (6th Cir. 1968) provides the framework for this analysis. There, the Sixth Circuit opined that police reports are hearsay and normally not admissible, but that they may be admitted for a limited, non-hearsay purpose. *Id.* at 447. The Sixth Circuit applied that principle in *United States v. Ott*, 229 F.3d 1155 (6th Cir. 2000), where it identified a specific limited purpose for admitting the contents of a police report.

There, the defendant argued on appeal that the admission of a police officer's testimony was error because he had testified to the contents of a police report. *Id.* at *4. Over the objections of defendant's counsel, the officer testified that a vehicle defendant had been charged with stealing was reported stolen. *Id.* The officer could not recall this information from his memory. *Id.* Rather, he relied on the police report to refresh his memory. *Id.* The district court acknowledged that the officer's testimony was hearsay and could not be offered to prove that the car was stolen—the truth of the matter asserted. *Id.* Nevertheless, the court allowed the officer's testimony "for the purpose of establishing that a report on a stolen car had been filed and that [the officer] had entered the VIN into the computer." *Id.*

On appeal, the Sixth Circuit affirmed the district court's decision. *Id.* at *5. The court reasoned that "[a] police report detailing the facts of an alleged theft, which is offered only to prove that the theft was reported, says nothing whatsoever about whether the item was, in fact, actually stolen." *Id.* The court opined that "[s]uch a report is not offered to prove the truth of the matter asserted, and is not hearsay at all." *Id.*

7

Although the factual predicate is not exactly the same, the court's reasoning is applicable here. This Court has carefully considered the admission of the police reports, and has concluded that they are not offered to prove that motorcycles were actually stolen. The Federal Rules of Evidence recognize that police reports cannot be admitted standing alone for that purpose. Instead, here they are offered for the limited purpose of providing the jury with an understanding of the investigation process undertaken by Detective Riley and Sergeant Kenney. The jury is not allowed to consider this evidence for any other reason than this limited purpose. And the Defendants certainly may propose a jury instruction on this issue for consideration.

Next, Defendants object to the Court's decision to allow the admission of the police reports as exhibits without proper authentication. This argument, crafted after a one day recess resulting from inclement weather, does not support a mistrial. Rule 901 of the Federal Rules of Evidence states the general requirement for authentication of a document. Rule 901(a) provides: "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." To put this simply, the issue to consider with respect to authentication is whether "the document is what it purports to be." *Kleenit, Inv. v. Senty Ins. Co.*, 486 F.Supp.2d 121, 130 (D.Mass.2007).

Although the government may elicit future testimony that will further authenticate the police reports relied on by Sergeant Kenney and Detective Riley, the Court is not convinced that authentication is necessary given the limited purpose for which the police reports were offered. To be clear, Sergeant Kenney and Detective Riley did not testify to the contents of the police report for the purpose of proving that specific motorcycles were

8

stolen. Instead, their testimony detailed the affect the police reports had on their investigation. There is support for the proposition that authentication of documents is only necessary when a party intends to use statements within that document to prove the truth of the matter asserted. *See Langbord v. U.S. Dept. of Treasury*, 2011 WL 2623315, (E.D. Penn. July 5, 2011) (where the court held that "the Government need only authenticate a document under Rule 901(b)(8) in order for statements therein to be admissible to prove the truth of the matter asserted."). Based on this conclusion, Defendants again cannot meet their burden under the mistrial standard.

### III

Accordingly, and the Court being sufficiently advised, it is **HEREBY ORDERED** as follows:

(1) Defendants' motion for mistrial on the basis of juror bias is **DENIED**, and further, the Court finds that the alleged juror bias does not justify holding *Remmer* hearing; and

(2) Defendants' motion for mistrial on the basis of the admission of police reports is **DENIED**.

This 8th day of March, 2013.



Signed By:
*Gregory F. Van Tatenhove*
United States District Judge