UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal No: 11-51-GFVT |
| | ) | |
| V. | ) | |
| | ) | |
| ROBERT JASON CHAPMAN, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **&** |
| Defendants. | ) | **ORDER** |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendants were indicted of several counts all arising from the theft of motorcycles. Most defendants pled guilty. Three, however, elected to go to trial. Two of those defendants, Mark Justice and Richard Meade, were convicted and now have filed numerous motions challenging the verdict. For the reasons set forth, all of the motions will be denied.

**I**

The procedural history in this case is lengthy and important to the resolution of the pending motions. The trial began on February 25, 2013 [R. 591] and lasted 14 days, concluding on March 19. [R. 615.] The jury found Justice and Meade guilty. [R. 615; 616; 618.] On April 1, the United States filed a Motion for an evidentiary hearing on the issue of forfeiture. On April 2, Justice filed a motion for a new trial [R. 624] and on the next day he filed a motion to set aside the verdict. [R. 625.] On July 16, Meade requested release pending appeal. [R. 701.] On August 8, Meade filed a motion to arrest judgment and dismiss the indictment for failure to charge an offense. [R. 711.] The next

day, Justice joined in Meade's motion to arrest judgment. [R. 712.] He also filed a motion for bond pending appeal the same day. [R. 713.] On August 23, Meade objected to the Court hearing any further proceedings in this matter before ruling on his previously filed motion to arrest judgment. [R. 725, (referring to R. 711)]. On August 28 and 29, the United States filed a motion and amended motion to show cause regarding the allegedly inappropriate tactics employed by Defense Counsel [R. 729; 730], which has been fully briefed. [R. 733; 740.] In early September, Defendants asked the Court to recuse and, finally, on September 12, Meade filed a motion requesting attorney's fees and sanctions. [R. 743.] On October 29, the Court denied Defendants' motion seeking this Court's recusal. On November 25, the parties were ordered to enter the transcripts from trial into the record and to resubmit their motions with references to the transcripts. The parties having complied, the Court now considers the outstanding motions that attack the verdict.

## II

### A

Federal Rule of Criminal Procedure 34 provides "[u]pon the defendant's motion or on its own, the court must arrest judgment if: (1) the indictment or information does not charge an offense; or (2) the court does not have jurisdiction of the charged offense." Fed. R. Crim. P. 34. The rule establishes that "[t]he defendant must move to arrest judgment within 14 days after the court accepts a verdict or finding of guilty, or after a plea of guilty or nolo contendere." *Id*. When, as is the case here, the Court is asked to arrest judgment on the basis of a bad indictment, "[t]he sufficiency of an indictment is reviewed de novo." *United States v. Gibson*, 409 F.3d 325, 331 (6th Cir. 2005) (citing *United States v. Gatewood,* 173 F.3d 983, 986 (6th Cir. 1999)).

Meade filed a motion to arrest the judgment of this Court, which alleges that the indictment fails to effectively charge Meade and, as a result, this Court lacks the proper jurisdiction to have heard the case. Justice has joined Meade in this motion. [R. 712.]

**1**

As stated in the rule, defendants have fourteen days from when "the court accepts a verdict or finding of guilty" to file a motion to arrest judgment. Fed. R. Crim. P. 34. *See also United States v. Posr*, 463 F. Supp. 2d 434 (S.D.N.Y. 2006) (time for defendant to file motion to arrest judgment began running on date of conviction). Defendants concede this point in their August 8 Motion. [R. 711-2, stating "Normally, a defendant has 14 days after entry of the judgment or verdict, or a plea, within which to bring such a motion."] In this case, the Court accepted the jury's verdict and finding of guilt on March 19. This happened when, after the Jury returned the verdict, the Court asked Mr. Justice to stand and stated:

> The defendant, Mark Justice, having pled not guilty to the offenses charged in the superseding indictment Counts 1, 5, and 9, and the jury having found you guilty of those offenses, I do find you guilty of those offenses.

[R. 772 at 216 (Tr. Mar. 19).] After advising Justice, the Court spoke to Meade:

> The defendant, Richard Meade, having pled not guilty to the offenses charged in the superseding indictment to Counts 1, 3, 7 and 8, and the jury, having found you guilty of those offenses, I do find you guilty of those offenses, having pled not guilty, and to the offense charged in the superseding indictment at Count 6, and the jury having found you not guilty of that offense, I hereby enter a judgment of acquittal on that offense.

[Id. at 217 (Tr. Mar. 19).] Verdict forms were then entered into the docket. [R. 616; 618.] These acts constituted this Court's acceptance of the Jury's finding of guilt.

Despite the deadline imposed in the rule, Defendants waited over four months before filing this motion to arrest judgment on August 8. The apparent justification for this delay was Defense Counsel not "discovering a Supreme Court opinion, *United States v. Santos*, and a Sixth Circuit decision *Wooten v. Cauley*, indicating that the indictment in this case fails to charge… an offense of the money laundering statute" until the time of the filing. [R. 743 at 3.] Defendants argue, however, that there is no time limit for a court to arrest judgment on its own motion. [Id. at 3.]

It is unclear whether the Rule 34 time limit applies to the Court acting on its own motion. *See* Fed. Prac. & Proc. Crim., § 603, Time for Motion, (4th ed.). While Rule 34 has been recently amended, earlier case law actually suggests that the fourteen day timeline imposes a jurisdictional bar on the Courts. See *United States v. Braswell*, 51 F. App'x 783, 784 (9th Cir. 2002) (District court did not err by denying motion for arrest of judgment because it was not filed within time period stated in rule.); *Rowlette v. United States*, 392 F.2d 437, 439 (10th Cir. 1968) (Referring to motions for arrest of judgment, judgment of acquittal and a new trial, the appellate court explained "[t]hese motions were untimely filed… and, therefore, deprived the trial court of jurisdiction to consider them."); *U. S. v. Reeves*, 293 F. Supp. 213, 214 (D.D.C 1968) (Referring to a motion to arrest judgment, stated "the Court is not permitted to enlarge the time permitted for the filing of such a motion.") Since this request to arrest judgment has been presented to the Court through a Defense motion, this Court finds it unnecessary to decide the issue of whether a judge could, *sua sponte,* arrest judgment outside the fourteen day window.

In what is fashioned as a *Notice of Objection to Further Proceedings*, filed on August 23, 2013, Defendants makes their case for why the Court should consider their

4

motion to arrest judgment. They argue that since their motion alleges "constitutional and jurisdictional flaws, which divest the Court of the authority to conduct any further proceedings in this matter," the Court must rule on the motion before proceeding to sentencing. [R. 725.] In support of this proposition, and likely with the knowledge that their motion to arrest judgment was untimely, the Defense looks to a District Court decision from Michigan, *U.S. v. Brown*, 154 F. Supp.2d 1055 (E.D. Mich. 2001). In that case, defense counsel argued, post-verdict, that problems with the indictment divested the Court of jurisdiction. The Court struggled to find what procedural device would allow it to consider the objection. As has been argued in this case, the Court in *Brown* concluded that the best tool was a Rule 34 motion to arrest judgment, however, that motion would have been untimely. The Court then looked to the earlier edition of the same treatise cited *supra*, Charles Allen Wright, Federal Practice and Procedure, § 193, at 334-35 (3rd ed. 1999), and focused in on what the treatise, and ultimately the Court, construed as an inconsistency between Rule 34 and Rule 12(b)(3)(b).[1] That rule provides that "at any time while the case is pending, the court may hear a claim that the indictment or information fails to invoke the court's jurisdiction or state an offense." Fed. R. Crim. P. 12(b)(3)(b).

This Court elects not to go to such lengths to get around the clearly imposed time limit in Rule 34. Rules governing post-verdict motions, which contain specific timelines, were designed to provide finality following a verdict. If Congress sought to permit the filing of motions to arrest judgment any time before sentencing or before appeal, they

---

[1] At the time of *U.S. v. Brown*, 154 F. Supp.2d 1055 (E.D. Mich. 2001), the rule actually cited was 12(b)(2) but due to an update in the Federal rules the provision is now at Rule 12(b)(3)(b).

could have written that into the rule. They did not. This court will not circumvent the rule's clearly written timeline to justify responding to an untimely filed motion.[2]

**B**

After a jury has reached a verdict, a defendant is permitted to file a motion for judgment of acquittal challenging the sufficiency of the evidence pursuant to Federal Rule of Criminal Procedure 29. Fed.R.Crim.P. 29(a), (c). "A defendant making such a challenge bears a very heavy burden." *United States v. Tocco*, 200 F.3d 401, 424 (6th Cir. 2000). When undertaking such review, the court "must decide whether, after viewing the evidence in a light most favorable to the government, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Gardner*, 488 F.3d 700, 710 (6th Cir. 2007). Moreover, courts are precluded from weighing the evidence, considering witness credibility, or substituting its judgment for that of the jury. *United States v. Chavis*, 296 F.3d 450, 455 (6th Cir. 2002). "A judgment is reversed on insufficiency-of-the-evidence grounds 'only if [the] judgment

---

[2] While the Court finds it ultimately unnecessary to address the motion to arrest judgment on its merits, the Court has, out of an abundance of caution, reviewed the arguments and concluded they are without merit. A brief summary of the crux of Defendants' motion provides some context to this discussion. Defendants allege that the indictment fails to charge them with an offense. [R. 711-2.] Defendants were, they argue, improperly charged with engaging in financial transactions involving *criminally derived property* (motorcycles) that was *proceeds* of *specified unlawful activity*. [R. 711-2.] Defendants argue that, at the time of the allegedly criminal behavior, *proceeds* was defined as either "profits" or "gross receipts" and that the Government had to show Defendants engaged in financial transactions using either "profits" or "gross receipts" of *specified unlawful activity*. This is based on the Supreme Court's holding in *United States v. Santos*, 553 U.S. 507 (2008). Following the Supreme Court's holding in *Santos*, Congress amended the money laundering statutes. Defendants argue it was these amendments that made *criminally derived property* a recognized subcategory of *proceeds* but that this did not happen until after the Defendants' allegedly criminal behavior occurred. They argue the Sixth Circuit's decision in *Wooten v. Cauley*, 677 F.3d 303 (6th Cir. 2012) to not apply *Santos* retroactively makes the Government's charging language in the indictment faulty. In Defendants' opinion, "[w]hen the financial transactions were conducted in this case, the statute…criminalized…the laundering of money and its various permutations" but not items of property, like motorcycles. [R. 711-2 at 6.] Defendants also take issue with whether the language used in the indictment to identify the *specified unlawful activity* (the interstate shipment of motor vehicles) does, in fact, constitute a *specified unlawful activity* under the statute and whether the elements of those activities were sufficiently explained in the indictment. [R. 711-2 at 5.]

is not supported by substantial and competent evidence upon the record as a whole.' "
*Gardner*, 488 F.3d at 710 (quoting *United States v. Barnett,* 398 F.3d 516, 522 (6th Cir. 2005); *United States v. Beddow,* 957 F.2d 1330, 1334 (6th Cir. 1992)).

Rule 33 establishes that "[u]pon the defendant's motion, [a district] court may vacate any judgment and grant a new trial if the interest of justice so requires." *U.S. v. Munoz*, 605 F.3d 359, 373 (6th Cir. 2010); *see also* Fed.R.Crim.P. 33(a). The phrase "interest[ ] of justice" is not defined within the rule, and courts have had marginal success in trying to "generalize its meaning." *Id.* (quoting *United States v. Kuzniar,* 881 F.2d 466, 470 (7th Cir. 1989)). Still, several themes remain constant in the Rule 33 context. The conventional use of a Rule 33 motion "is to seek a new trial on the ground that 'the [jury's] verdict was against the manifest weight of the evidence.' " *Id.* (quoting *United States v. Crumb,* 187 Fed.Appx 532, 536 (6th Cir. 2006)); *see also United States v. Legette-Bey,* 147 Fed.App'x 474, 486 (6th Cir. 2005); *United States v. Graham,* 125 Fed.App'x 624, 628 (6th Cir. 2005); *United States v. Solorio,* 337 F.3d 580, 589 n. 6 (6th Cir. 2003). Finally, "[w]ith a Rule 33(a) motion for new trial on the ground that the verdict is against the weight of the evidence, the power of a court is much broader because a court may weigh the evidence and consider the credibility of the witnesses." *U.S. v. Dimora*, 879 F.Supp.2d 718, 724 (N.D. Ohio 2012). Justice raises six substantive errors that he believes entitle him to either a new trial or acquittal.

### 1

Justice argues that Seargent Riley's opinions on identifying marks indicating serial number modifications were improperly admitted. [R. 624 at 1-5.] He argues that Riley was not qualified to provide testimony regarding metallurgy, specifically about

whether a vehicle identification number (VIN) ever existed on the frame of the motorcycle at issue in Count nine of the indictment. [R. 624 at 2.] Riley's contested opinion, as characterized by Justice, was that a VIN had once been on the motorcycle, had been removed and then was permanently destroyed by acid during Riley's testing. [R. 324 at 2 (citing R. 763 at 125-127 (Tr. Mar. 4)).] Justice argues there was no indication a VIN ever existed in that location and that Riley did not provide any basis for this conclusion except that he thought the motorcycle frame was a Harley Davidson. [R. 624 at 2.] Justice contends that the VIN's obliteration is a scientific impossibility and that only one witness, Dr. Tobin, was qualified to render opinions on the ability of acid to melt steel. Tobin's tests established that "there were no indications of modifications to the metal, nor had any acid or grinding done anything that would have modified the metal to the degree necessary to obliterate a VIN." [R. 624 at 4 (citing R. 768 at 157-161 (Tr. Mar. 13)).] Justice believes that Riley's opinion testimony was improperly admitted, over his objection, as it was outside the scope of Riley's expertise. [R. 624; R. 650 at 2.]

The United States disagrees, arguing that police officers' testimony is often admissible as expert testimony. In the *United States v. Anderson*, the Sixth Circuit concluded that an officer's testimony that "he had over nine years of law enforcement experience before joining the DEA in 1991 and that he had participated in other drug raids" was sufficient to justify the Officer's testimony that seized items were consistent with drug trafficking. 89 F.3d 1306, 1312 (6th Cir. 1996). The United States refers to the Sixth Circuit's conclusion that "[c]ourts have overwhelmingly found police officers' expert testimony admissible where it will aid the jury's understanding of an area, such as

drug dealing, not within the experience of the average juror." *United States v. Thomas*, 74 F.3d 676, 682 (6th Cir. 1996).

This is not the first time that the Court has addressed the scope or nature of Riley's testimony. In an Order issued on December 12, 2012, this Court found that Riley was an expert and capable of testifying regarding "techniques utilized to complicate and obscure motorcycle[s] and motorcycle part identification." [R. 396.] This qualifies him to state his opinion in this subject area. Riley's testimony fell into this realm and was permissible. Justice overstates the technicality of Riley's opinions.

Furthermore, the jury received thorough instruction from the Court on judging witness credibility and weighing opinion testimony:

> You have heard testimony from William Tobin, who testified as an opinion witness.
>
> You do not have to accept Mr. Tobin's opinion. In deciding how much weight to give it, you should consider the witness's qualifications and how he reached his conclusions. Also consider the other factors discussed in these instructions for weighing the credibility of witnesses.
>
> Remember that you alone decide how much of a witness's testimony to believe, and how much weight it deserves.

[R. 707 at 36.] Jurors also received special instruction on how to consider Riley's testimony as he testified to both fact and opinion:

> You have heard the testimony of Sergeant Robert Kenney of the Connecticut State Police and former Detective William Riley of the Kentucky State Police. They testified to both facts and opinions. Each of these types of testimony should be given the proper weight.
>
> As to the testimony on facts, consider the factors discussed earlier in these instructions for weighing the credibility of witnesses.
>
> As to the testimony on opinions, you do not have to accept Sergeant Kenney or Mr. Riley's opinion. In deciding how much weight to give it, you should consider

9

> the witnesses' qualifications and how they reached their conclusions along with the other factors discussed in these instructions for weighing the credibility of witnesses.
>
> Remember that you alone decide how much of a witness's testimony to believe, and how much weight it deserves.

[R. 707 at 37.] These instructions directly address Justice's concerns. To the extent that either witnesses testimony lacked credibility or scientific support, the parties were able to argue the point to the jury. Finally, a jury is well provisioned to evaluate the testimony. If Riley gave opinion testimony that the Defense considered scientifically questionable then the jury was able to lend it little credence. This is what juries do.

In terms of Rule 29, the Court is precluded from "substituting its judgment for that of the jury." *Chavis*, 296 F.3d at 455. The Court similarly finds no reason to upset the Jury's verdict in light of the more stringent Rule 33 standard. The testimony was properly admitted in light of Riley's status as an expert witness.

## 2

Justice suggests he is entitled a new trial on the grounds that the United States willfully withheld polygraph results which demonstrated George Ferguson's testimony was false. Justice argues that the Government was obligated to disclose the information pursuant to *Brady v. Maryland,* 373 U.S. 83 (1963). [R. 624 at 6-7.] Furthermore, they argue that, had this information been provided "prior to the cross-examination of George Ferguson it would have been extremely effective in impeaching him." [Id.]

The Government acknowledges that a polygraph exam was taken by Ferguson but denies error, claiming the Defense had been notified of the examination, despite the fact

that the occurrence of this polygraph examination does not qualify as "material" evidence under the standard set out in *U.S. v. Bagley*, 473 U.S. 667 (1985). [R. 647 at 3-4.]

First, the Government points out that documents addressing the polygraph were provided in discovery. An FD-302, dated January 31, 2013 states, "[t]his interview was conducted following the administering of a polygraph test to Mr. Ferguson." [R. 647, Exhibit A.] The Government claims this report was disclosed in supplemental discovery. [R. 647 at 3.] The Government also refers to a discussion, mid-trial, where Counsel for Mr. Ferguson objected to the admission of a statement made immediately following the polygraph examination. [R. 766 at 183-189 (Tr. Mar 11).] The parties spoke at length about Ferguson's testimony, the polygraph examination, and the circumstances surrounding it. The Court concluded that the statement was admissible as evidence with the caveat that no mention was made of the polygraph. [R. 647 at 4; R. 766 at 182 (Tr. Mar 11).] Ferguson testified on March 14, after the discussion about the polygraph.

Second, even if Justice had been unaware of the polygraph, the Government's non-disclosure would not have qualified as a violation of *Brady v. Maryland*. The due process clause requires the government disclose material evidence that is favorable to the defendant. *Brady v. Maryland*, 373 U.S. 83 (1963). In *Brady*, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87. Thus, "[t]here are three components of a true *Brady* violation: the evidence must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must

11

have ensued." *Strickler v. Green*, 527 U.S. 263, 281-82 (1999). A defendant is prejudiced when there is "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyles v. Whitley*, 514 U.S. 419, 433-34 (1995) (quoting *Bagley*, 473 U.S. at 682). Evidence that falls into this category is called *material evidence* and the term "reasonable probability" is defined as "a probability sufficient to undermine confidence in the outcome." *Bagley*, 473 U.S. at 682.

In the case at hand, the Government claims the evidence does not implicate *Brady* for multiple reasons. First, the evidence was not favorable to the accused as it merely established Ferguson did have knowledge of the motorcycles being stolen. [R. 647.] Second, the government points out that evidence of the polygraph could not be material because the results are inadmissible—precluding justice from using it to impeach Ferguson. [R. 647 at 4.] *See United States v. Barger*, 931 F,2d, 359, 370 (6th Cir. 1991) ("Generally, the results of a polygraph examination are inadmissible into evidence.") Furthermore, as previously discussed, the evidence was not suppressed by the Government. Quite to the contrary, the Defense was, at least constructively, on notice of the polygraph exam.

The Sixth Circuit addressed a very similar issue in *U.S. v. Gardiner*, 463 F.3d 445 (6th Cir. 2012). In that case, the Defendant was convicted and then argued that he was entitled to a reversal on the ground that the government did not disclose that one of the witnesses had failed a polygraph test. The Sixth Circuit disagreed, stating that "a prosecutor has no constitutional duty even to *disclose* to a criminal defendant the fact that a witness has 'failed' a polygraph test." *Gardiner*, 463 F.3d at 468 (quoting *King v.*

12

*Trippett,* 192 F.3d 517, 522 (6th Cir. 1999); citing *Wood v. Bartholomew*, 516 U.S. 1, 5-6 (1995)). This rule hails from the highest Court of the land which has, too, considered polygraphs and for the reasons explicated decided that their non-disclosure is permissible. The Court sees no reason why this rule should not also apply to co-defendants. For all the aforementioned reasons, the Court did not err and neither Rule 29 or 33 requires the Court to grant relief from the judgment.

**3**

Justice next argues that the Court erred by not granting motions to dismiss Count two early enough in the proceedings. He claims it was too late when Count two was dismissed just before the closing argument.[3] [R. 624 at 7.] Justice argues that the United States' willful inclusion of an unsupported charge tainted the jury. [Id.] The United States conceded at trial that not enough evidence had been produced to support giving the charge to the jury but argues that there was no error in prosecuting the Count as the Grand Jury determined probable cause existed to support the Count. [R. 647 at 7.] The Court overruled no less than three motions to dismiss Count two before trial.[4] In the Court's February 11, 2013 Order [R. 349], the Court notes Justice's failure to provide any case law or facts to support his argument. Justice now assigns error to the Court's previous decisions not to dismiss the Count. It is worth noting, however, that Justice has again cited no case law or provided any facts to support his current objection.

---

[3] The Court notes that Count two was dismissed following the close of the Government's case, not "just before closing arguments."
[4] In addition to the objections filed at trial, Justice also filed objections at R. 276, R. 349, R. 485 and also filed a motion to dismiss Count two as part of R. 502. The Court addressed Count two at R. 402, R. 584, at trial and presently.

13

The allegation in Count two suggests that Justice knowingly transferred title from a Harley Davidson, despite knowing the motorcycle was illegally obtained, and then transferred the bike to conceal the nature, location, source, ownership and control of the motorcycle. [R. 157 at 2-3; R. 544 at 1.] The Court stands by its earlier Orders. Justice has provided no reason for the Court to believe the charge was not properly indicted. "An indictment returned by a legally constituted and unbiased grand jury… if valid on its face, is enough to call for trial of the charge on the merits." *Costello v. United States*, 350 U.S. 359, 363 (1956).

When it became clear that the Count could not be sent to the Jury, it was dismissed. Justice claims that "the allegation was discussed in opening statement, yet no witnesses or evidence were ever introduced" to support Count two but, at the same time, complains because the Court did not instruct the jury to "ignore the evidence given" on that Count. [R. 624.] Justice cannot say no evidence was offered and then complain about the evidence going to the jury. The Court supposes that Justice's ideal corrective instruction would have instructed the jury to ignore references made in opening statements to the Count as no other evidence was submitted in support of it. The Court's instructions to the jury provided a thorough explanation of the law to be considered in returning their verdict.

As addressed in detail in the Court's February 11 Order, unsupported accusations about "willful" decisions by the United States to advance unsupported charges are inappropriate.[5] [R. 544.] Neither Rule 29 or 33 provide Justice the relief he seeks.

---

[5] Specifically, the Court Stated: "For an Assistant United States Attorney, charges of misconduct should be taken seriously and can have significant career implications. For that reason, allegations of misconduct should not be made recklessly. They should be made only after careful consideration and based only on a

Viewing the evidence in the light most favorable to the Government, the Court permitted the charge to survive until the close of the Government's case when it was dismissed. This was not error.

4

Justice argues Count five, which charges money laundering in violation of Title 18 United States Code § 1956(a)(1)(B)(i), should have been dismissed as the motorcycle at issue was built from scratch, with no part being identified as stolen. [R. 624 at 7.] The United States argues sufficient testimony was given to provide the charge to the jury. The Court notes that the defense moved for the dismissal of Count five following the close of the Government's case and the motion was denied. [R. 768 at 48 (Tr. Mar 13).]

The Government lays out exactly what facts support Count five being given to the jury. The record shows that Curtis Withrow testified that parts for his motorcycle were supplied by Mark Justice and that the motorcycle had been assembled in Justice's garage. [R. 766 at 87-104 (Tr. Mar. 11).] William Riley testified that parts of the motorcycle seized from Curtis Withrow (which had been assembled in Justice's garage) were traced to a motorcycle stolen from Glyndon Register. [R. 762 at 156-157 (Tr. Feb. 28).] Glyndon Register testified that his motorcycle had been stolen and, when shown the motorcycle in question, confirmed that he believed the bike to be his. [R. 765 at 110-114 (Tr. Mar. 7).]

The standard for whether a charge should be dismissed, before the case is submitted to the jury is explained in Criminal Rule 29:

---

credible record consistent with the law. This is decidedly not the case here. Seeking to discredit the government prosecutor instead of the case being prosecuted raises serious ethical concerns when based on such a thin reed. Defense counsel are on notice that further unsubstantiated charges will not be tolerated." [R. 544.]

> After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the *evidence is insufficient to sustain a conviction.*

Fed. R. Crim. P. 29 (emphasis added). "A judgment is reversed on insufficiency-of-the-evidence grounds 'only if [the] judgment is not supported by substantial and competent evidence upon the record as a whole.' " *Gardner*, 488 F.3d at 710 (quoting *Barnett,* 398 F.3d at 522; *Beddow,* 957 F.2d at 1334. This is a high burden for Justice to clear. He did not meet the Rule 29 burden when he argued the issue at trial and he does not meet the burden here. Sufficient evidence did exist for the charge to go to the jury. Additionally, the Court finds no reason to believe "the verdict was against the manifest weight of the evidence" and so it also fails under Rule 33.

**5**

In a three sentence objection which cites no case law, Justice assigns error to the Court permitting Sgt. Kinney to decline answering questions on cross examination about the basis for his answers on direct examination. [R. 624 at 8.] Kinney's declination was rooted in the belief that, by answering the questions, he would divulge industry secrets about identifying markings on motorcycle parts. The United States does not appear to contest the facts underlying this objection but argues the Court's actions do not constitute error.

The Sixth Amendment establishes that "[i]n all criminal prosecutions, the accused shall enjoy the right…to be confronted with the witnesses against him." U.S. Const. Amend. VI. This clause has been interpreted to provide two different types of protections: "the right physically to face those who testify against him, and the right to conduct cross-examination." *Pennsylvania v. Ritchie*, 480 U.S. 39, 51 (1987) (citing

*Delaware v. Fensterer,* 474 U.S. 15, 18–19 (1985) (*per curiam*)). Justice implicates the second protection. The Supreme Court, however, has explained, assuredly to the dismay of many a criminal defendant, that the confrontation clause only guarantees "an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent the defense might wish." *Ritchie*, 480 U.S. at 53 (citing *Fensterer,* 474 U.S. at 18–19 (*per curiam*)). "Trial courts 'retain great discretion to impose reasonable limits on the cross-examination of witnesses....' " *United States v. Lanham*, 617 F.3d 873, 884 (6th Cir. 2010) (citing *United States v. Davis,* 430 F.3d 345, 360 (6th Cir. 2005) (internal quotations and citations omitted)). To evaluate whether the district court abused discretion in limiting the cross examination, the question is " 'whether, despite the limitation of cross-examination, the jury was otherwise in possession of sufficient information ... to make a 'discriminating appraisal' of a witness' motives and bias.' " *Lanham*, 617 F.3d at 884 (quoting *United States v. Kone,* 307 F.3d 430, 436 (6th Cir. 2002) (internal citations, quotations, and alterations omitted)).

Kinney's permitted refusal to answer questions about identifying markings did not prevent the jury from discriminately appraising the motives or biases of his testimony. His background and expertise was known to the jurors and he answered, more broadly, questions about the markings and the motorcycles. The Court finds no error justifying relief under either Rule 29 or 33.

### 6

Finally, Justice claims the Court erred when it denied a hearing on the issue of whether a juror, who allegedly felt intimidated by Justice, was biased. [R. 624 at 8.] Justice moved for a mistrial on juror bias grounds during the trial and the Court issued a

17

mid-trial Order addressing the request. [R. 597.] Justice rests his argument on the rule that perceived juror intimidation is remedied by the holding of a hearing where the defendant has an opportunity to prove actual juror bias. *United States v. Pennell*, 737 F.2d 521 (6th Cir. 1984) (quoting *Smith v. Phillips*, 455 U.S. 209, 215 (1982)). This rule does not apply here because the "perceived juror intimidation" does not rise to the level where it might potentially affect the verdict. In its March 8, mid-trial Order, this Court summarized Sixth Circuit law on the issue of what type of juror contact requires a hearing:

> …the Sixth Circuit has been careful to note that "not all communications with jurors warrant a hearing for a determination of potential bias." *United States v. Frost*, 125 F.3d 346, 377 (6th Cir. 1997) (quoting *United States v. Rigsby*, 45 F.3d 120, 123 (6th Cir. 1995)). "Instead, an allegation of an unauthorized communication with a juror requires a *Remmer* [*v. United States*, 347 U.S. 227 (1954),] hearing only when the alleged contact presents a likelihood of affecting the verdict." *Frost*, 125 F.3d at 377 (quoting *Rigsby*, 45 F.3d at 123). "Intentional improper contacts" require a hearing. *Id*. And contacts that have "an obvious potential for improperly influencing the jury" obligate a court to hold a *Remmer* hearing. But an unintentional contact does not per se justify court intervention. *Id*.

[R. 597 at 3.] Not all contact justifies the Court holding a hearing. From the outset it is crucial to note, somewhat paradoxically, that there was no juror contact alleged. Rather, the juror reported to the Court Security Officer that they felt Justice was staring at the jury. The Court, having the issue raised, was more vigilant in the following days and noticed no inappropriate conduct or staring.

As was also discussed in the Court's earlier order, *United States v. Owens*, 426 F.3d 800 (6th Cir. 2005) presents nearly identical facts. In that case, the judge received a note from a juror which conveyed her discomfort with the defendant as she believed he was "staring at her." *Id*. The District Judge in Owens denied a *Remner* hearing. The

18

Sixth Circuit upheld the decision as the staring was not an *extraneous influence*, defined as "one derived from specific knowledge about or a relationship with either the parties or their witnesses." *Owens*, 426 F.3d at 805 (*quoting United States v. Herndon,* 156 F.3d 629, 635 (6th Cir. 1998)). The alleged staring in this case, and its impact on the juror, is remarkably similar to those in *Owens*. To grant Justice relief in this situation would incentivize defendants, like Justice, to make jurors feel uncomfortable. See Owens, 426 F.3d at 805 (Cf. *United States v. Reesor*, 2001 WL 523931, *6 (6th Cir. 2001)). These facts do not qualify Justice for either a new trial or a judgment of acquittal.

C

Defendant's motion for clarification addresses numerous, seemingly unrelated issues. If a concrete theme or request were to be gleaned from this entry it is that the Defendants are unclear whether the Court would like to hear oral arguments on the motion to arrest judgment and on Meade's motion for release pending appeal. As the Court has now ruled on the motion to arrest judgment and the motion for release pending appeal has been fully briefed, oral arguments are unnecessary. Therefore, the motion to clarify will be DENIED.

III

Meade's motion to arrest judgment was not timely filed. Justice's multiple objections offered no grounds for this Court to either grant a new trial or enter a judgment of acquittal. In sum, Defendants' are entitled no relief. Accordingly, it is hereby **ORDERED** as follows:

1. Justice's Motion to Join [R. 712] in Meade's motion to arrest judgment and dismiss indictment shall be **GRANTED**;

19

2. Meade's motion to arrest judgment and dismiss indictment [R. 711] is **DENIED**;

3. Justice's motion for a new trial [R. 624] is **DENIED**;

4. Justice's motion for judgment of acquittal [R. 625] is **DENIED**, and

5. Meade's motion for clarification [R. 751] is **DENIED**.

This 10th day of February, 2014.

Signed By:
*Gregory F. Van Tatenhove*
United States District Judge