UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal No: 11-51-GFVT |
| | ) | |
| V. | ) | |
| | ) | **MEMORANDUM OPINION** |
| RICHARD MEADE and | ) | **&** |
| MARK JUSTICE, | ) | **ORDER** |
| | ) | |
| Defendants. | ) | |

*** *** *** ***

Defendants were convicted by a jury of their peers, over two years ago, of crimes related to the theft of motorcycles in violation of the laws of the United States. Post-verdict challenges to the indictment in the days preceding their original sentencing caused the Court to continue that proceeding. What followed was a barrage of filings calling into question everything from the sufficiency of the indictment to the motivations and tactics employed by both defense counsel and the prosecutors. Both the Sixth Circuit and the United States Supreme Court rebuffed efforts to prematurely delay the natural consequences of the jury's verdict. [R. 824; 836; 849; 860.] Even so, the Court was required to conduct an exhaustive and time consuming review of a record replete with complicated and concerning issues arising from the litigation decisions of both sides.

Having now resolved those concerns, the Court now turns to the motion to reconsider. [R. 794.] For the reasons set forth below, it will be **DENIED**.

**I**

While the procedural history of this case has been previously set out, it is important to thoroughly address both its current posture and how it got here.  Richard Meade was charged with one count of Conspiracy to Money-Launder in violation of 18 U.S.C. § 1956(h); three counts of Money-Laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i); and one count of Trafficking in Certain Motor Vehicle Parts in violation of 18 U.S.C. § 2321.  [R. 157.]  Mark Justice was charged with one count of Conspiracy to Money-Launder in violation of 18 U.S.C. § 1956(h); one count of Money-Laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i); and one count of Trafficking in Certain Motor Vehicle Parts in violation of 18 U.S.C. § 2321.  [*Id.*]

The fourteen day trial concluded on March 19, 2013.  Meade was found guilty on all but one count of Money Laundering.  [R. 615; 618.]  Justice was found guilty on all counts.  [R. 615; 616.]  After trial, Justice filed timely Motions for a New Trial [R. 624] and to Set Aside the Verdict [R. 625].  Meade and Justice have both asked this Court to consider allowing them to remain at liberty pending appeal.  [R. 701; 713.]  On August 8, 2013, nearly five months following the verdict, and less than one week before Sentencing was scheduled, Meade filed a motion to Arrest Judgment and Dismiss the Indictment for Failure to Charge an Offense [R. 711] which Justice joined [R. 712].  The Court continued Defendants' Sentencing so that it could consider and rule on post-verdict motions.  [R. 722.]  The case quickly devolved into name-calling, finger-pointing and disorganized, excessive briefing.

In late August, 2013, the United States asked the Court to Order Defense Counsel to show cause for what the Government perceived as inappropriate statements and

2

behavior employed by Defense Counsel.  [R. 729; 730].  Soon thereafter, Defendants asked the Court to recuse, alleging that the Government's request for a show-cause order was so biased that the Court was caught in a catch-22 with recusal as the only means of escape.  [R. 734.]  The Court denied that request.  [R. 753.]  Extensive, and often argumentative, briefing ensued for months.  Amidst that briefing, Defendants also asked for attorney's fees and that Sanctions be imposed against the Government.  [R. 743.]

On February 10, 2014, this Court issued a Memorandum Opinion and Order which denied the Defendants' motions for a new trial, judgment not-withstanding the verdict and to arrest judgment.  [R. 792.]  Following the entry of that Order, Defense Counsel filed an Interlocutory Appeal with the Sixth Circuit [R. 793], requested that the case be stayed and a preliminary injunction entered [R. 797], and also filed a motion asking the Court to reconsider its Order citing both Federal Rules of Civil Procedure 59(e) and 60(b).  [R. 794.]  The Sixth Circuit, however, refused to consider the Appeal while the Rule 59(e) motion to reconsider was pending before this Court.  [R. 795.]

Meanwhile, on April 1 of last year, this Court set a hearing on the motion to reconsider for April 10.  [R. 814.]  Defense Counsel objected and asked to set aside the scheduled hearing, arguing that while the above-mentioned Sixth Circuit filings remained pending that this Court was stripped of jurisdiction.  [R. 815.]  The Court disagreed, and entered an order reaffirming its intent to hold the hearing on the motion to reconsider and stated in that order that "it is important that Counsel responsible for developing and drafting the arguments underlying the contested issues be present."  [R. 818.]  On April 9, in a tactical move designed to provide the Sixth Circuit with jurisdiction, Defendants withdrew their Rule 59(e) motion (but not the Rule 60(b) motion).  [R. 819; 820; 822.]

3

On that same day, this Court converted the hearing scheduled for April 10 to a telephonic-status-conference to discuss the posture of the case. [R. 821.] The Court held that status conference and heard arguments from the parties about whether the District Court retained jurisdiction during the pendency of the filed interlocutory appeal. Over the objections of Defense Counsel, the Court concluded that, absent an Order from the Sixth Circuit stating otherwise, it would proceed with a hearing on the merits of the motion to reconsider. The Court sought input on convenient dates and everyone agreed that they would be available for a hearing on April 29.[1] [R. 823.] On the following day, the Sixth Circuit promptly dismissed Defendants' interlocutory appeal, affirming this Court's jurisdiction. [R. 824.]

On April 14, Defense Counsel asked the Court to move the hearing to April 28 due to a scheduling mistake and the Court accommodated this change. [R. 826; 830.] On April 25, the Court issued an Order providing additional guidance on the substantive topics to be argued at the hearing [R. 833] and, separately, the Sixth Circuit also denied a single-judge request for a stay [R. 836].

Finally, on April 28, the Court held the scheduled hearing. Despite an explicit Court Order to the contrary, Ms. McPherson, Defense Counsel primarily responsible for the framing of the arguments before the Court, was not in attendance.[2] At the hearing, the Government again asked the Court to Order Ms. MacPherson to show cause for her failure to appear. After a lengthy discussion with both the Government and remaining Defense Counsel, it was decided that the best way to proceed was to continue with the

---

[1]      As Ms. MacPherson's office is in Michigan, this accommodation was primarily made in consideration, and for the benefit of, her travel schedule.

[2]      Issues related to Ms. MacPherson's non-attendance will be addressed by subsequent Order of this Court.

hearing.  [R. 850 at 10-13, Apr. 28 Tr.]  The Court took the motion for a show cause

order under advisement.  [R. 839.]  Following the hearing, Ms. MacPherson asked this

Court to permit her to withdraw from the proceedings and has anticipatorily asked for a

Certificate of Appealability on this Court's future Order, notwithstanding whether that

Order ultimately grants or denies her motion.  [R. 845.]  Since that time, Defendant

Meade filed a petition for a writ of certiorari with the United States Supreme Court [R.

857], which was denied on October 7, 2014.  [R. 860.]  With this complex procedural

history as context, the Court now turns to the Motion to Reconsider. [R. 794.]

## II

Defendants' original Motion to Reconsider the February 10, 2014 Order of this

Court sought relief pursuant to both Federal Rules of Civil Procedure 59(e) and 60(b).

[R. 794.]  As discussed above, Defendants withdrew their 59(e) motion and now seek

relief solely under Federal Rule of Civil Procedure 60(b).  [R. 819.]  Neither of these civil

rules apply in criminal proceedings.  Nevertheless, the Court will consider Defendants'

attack on the Indictment pursuant to its power under Federal Rule of Criminal Procedure

12(b).

## A

Rules 59(e) and 60(b) are unavailable in criminal proceedings.  *See United States

v. Moon,* 527 F. App'x 473, 474 (6th Cir. 2013) (Affirming District Court's denial of

Rule 59(e) and 60(b) Motions seeking relief from criminal judgment because "neither

rule of civil procedure applies to criminal proceedings."); *United States v. Gibson*, 424 F.

App'x 461, 464 (6th Cir. 2011) ("'Rule 60(b) is not applicable to criminal proceedings,'

*United States v. Diaz,* 79 Fed.Appx. 151, 152 (6th Cir. 2003), and may not be used to

disturb a criminal sentence or conviction.") (additional citations omitted);  *United States v. Bender*, 96 F. App'x 344, 345 (6th Cir. 2004) ("Fed.R.Civ.P. 60(b) does not apply in criminal proceedings" but "may be used to seek relief from the denial of § 2255 motion.") (internal citations omitted).

The parties agree, however, that Rule 12 provides the Court with authority to go back and review the validity of the indictment.  [R. 850 at 17-23, Apr. 28 Tr.]  At the time these motions were made, Rule 12(b)(3) provided that:

> The following must be raised before trial: **(A)** a motion alleging a defect in instituting the prosecution; **(B)** a motion alleging a defect in the indictment or information--<u>but at any time while the case is pending, the court may hear a claim that the indictment or information fails to invoke the court's jurisdiction or to state an offense</u>."

Fed. R. Crim. P. 12 (Apr. 29, 2002, eff. Dec. 1, 2002) (amended December 1, 2014 ) (emphasis added).  While the Court will ultimately reach these issues using Rule 12, it is not entirely clear that the Defendants' allegations actually amount to a suggestion that that the indictment "fails to invoke the court's jurisdiction or to state an offense," as required by the plain language of the rule.  This ambiguity is owed in large part to the Supreme Court's holding in *U.S. v. Cotton*, 535 U.S. 625 (2002), where it was held that defective indictments do not deprive a court of Subject Matter Jurisdiction.  *Id.* at 630. At least in party because of this ambiguity, the Federal Rules of Criminal Procedure have been amended since the time that the pending motions were filed.

Alternatively, the parties argue that the Court may exercise its power to consider these arguments under Rule 34.  At the time the motion was filed, the rule provided that "[u]pon the defendant's motion or on its own, the court must arrest judgment if: **(1)** the indictment or information does not charge an offense; or **(2)** the court does not have

jurisdiction of the charged offense."  Fed. R. Crim. P. 34 (Mar. 26, 2009, eff. Dec. 1, 2009) (amended December 1, 2014).  When confronted with the Defendants' original Motion to Arrest Judgment, the Court chose not to consider the Motion substantively as it was not filed "within 14 days after the court accepts a verdict or finding of guilty" as required by Fed. R. Crim. P. 34.  In that Order, the Court noted the conflict between Federal Rules of Criminal Procedure 12 and 34 but decided not to ignore the clearly prescribed time limit in Rule 34.  The Court does not now reconsider its earlier decision to dismiss Defendant's Motion to Arrest Judgment as untimely.  Instead, as requested by the parties, it considers the Defendants' substantive arguments under Rule 12(b)(3).

## B

Defendants' post-trial objections are expansive.  Due to the aforementioned breadth, the irregular and disorganized filings and Defendants' confusing withdrawal of the Rule 59(e) component of its Motion to Reconsider, this Court entered into a very specific dialogue with Defense Counsel at the April 28, 2014 hearing on the question of what issues were still before the Court in the Motion to Reconsider.  [R. 850 at 19-21, Apr. 28 Tr.]  As has already been addressed *supra,* Defense Counsel's primary challenge is to this Court's February 10 Order that denied the Motion to Arrest Judgment as untimely.  Furthermore, Defense Counsel argues the indictment was insufficient for a number of reasons but most significantly in the way the government defined criminal proceeds, the way that the term *criminally derived property* was incorporated into Count 1 of the indictment, and how the specified unlawful activity (SUA) was described.  It is to these arguments that the Court now turns.

## 1

In 2008, the Supreme Court considered the meaning of "proceeds" as it is defined in the Federal Money Laundering Statute, 18 U.S.C. § 1956.[3]  The Court's decision in *United States v. Santos*, 553 U.S. 507 (2008) significantly impacted Money Laundering prosecutions.  In that case, Efrain Santos operated an illegal lottery and used the proceeds from his venture to pay employees who assisted with the operation of his business.  Santos was convicted of both conspiring to run and running an illegal gambling business in addition to conspiring to launder and actually laundering money.  He was sentenced to 60 months for the gambling counts and 210 months for promotional money laundering.[4]  Subsequently, Santos' sentence was vacated on the basis of an intervening Seventh Circuit decision that held the "federal money-laundering statute's prohibition of transactions involving criminal 'proceeds' applies only to transactions involving criminal profits, not criminal receipts."  *Id*. at 510 (*citing United States v. Scialabba,* 282 F.3d 475, 478 (2002)).  The Supreme Court denied Santos' initial *writ of certiorari* but later took the issue up after Santos sought Habeas relief under 22 U.S.C. § 2255.  *Id.* at 509.

---

[3]      18 U.S.C. § 1956 has been amended following *Santos*.  Congress directly addressed the *Santos* issue in 2009 when it amended the statutory framework of § 1956.  The Fraud Enforcement and Recovery Act (FERA) defined "proceeds" as "any property derived from or obtained or retained, directly or indirectly, through some form of unlawful activity, *including gross receipts of such activity*."  18 U.S.C. §1956(c)(9).  This is the broader, prosecutor-friendly definition that was endorsed by the dissent and rejected by the plurality in *Santos*.  It effectively overrules Santos prospectively.  The amendment does not apply retroactively.  *Wooten v. Cauley*, 677 F.3d 303, FN1 (6th Cir. 2012) (*citing United States v. Moreland,* 622 F.3d 1147, 1163 n. 4 (9th Cir. 2010)).  FERA is therefore irrelevant as the financial transactions in the present case occurred before its implementation.

[4]      18 U.S.C. § 1956 covers two different types of money laundering.  First, § 1956 (a)(1)(A) addresses *promotional money laundering* which "involves the reinvestment of proceeds of unlawful activity into the illegal scheme from which the proceeds were derived."  *United States v. Crosgrove*, 637 F.3d 646, 654 (6th Cir. 2011).  Second, § 1956 (a)(1)(B) addresses *concealment money laundering* which requires additional proof that defendants know the transaction is designed to "conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity."  § 1956 (a)(1)(B)(i).  The case presently before the Court is a *concealment* case.

In *Santos*, the Supreme Court confronted the seemingly esoteric question of whether the term *proceeds*, as used in 18 U.S.C. § 1956, refers to *profits* or *gross receipts* of the criminal enterprise.  This question is significant because of a practical problem the Supreme Court calls merger.  Every money-laundering conviction requires proof that the Defendant committed an underlying or predicate offense, also identified in the money laundering statute.  In the case of Santos, if *proceeds* was defined to mean *gross receipts* then the Court concluded that "nearly every violation of the illegal-lottery statute would also [have been] a violation of the money-laundering statute, because paying a winning bettor is a transaction involving receipts that the defendant intends to promote the carrying on of the lottery."  *Santos*, 553 U.S. at 515.  Lotteries almost always pay winners so virtually every violation of the illegal-lottery statute would equate to a money laundering conviction.  *Id.*  As a result, Santos would automatically be guilty of money laundering by the very act of committing the predicate offense (of which he was also charged).  This is what the Court refers to as *merger* and it is problematic when the money laundering conviction carries a longer sentence because it effectively increases the sentence that Congress established for the predicate crime.  *Id.* at 516-517.  When, however, *proceeds* are defined as *profits* then the problem of merger is avoided completely.  *Id.* at 517.

Ultimately, the Supreme Court held that sometimes *proceeds* mean *profits* and sometimes *proceeds* means *gross receipts*.  Adding to the confusion of this conditional holding is the fact that the Justices did not answer this question with a unified voice, but delivered a splintered opinion with three distinct perspectives on how to define *proceeds*.

Four justices, the plurality, applied the rule of lenity and adopted a defense-friendly definition where *proceeds* means *profits* in all cases. *Id.* at 513-14. This places a higher burden on the Government, requiring that they always prove that *proceeds* are more than just *gross receipts*. *Id*. at 519-521. These justices concluded that defining proceeds as *gross receipts* would create a *merger* problem for a number of predicate offenses under § 1956 and concluded this was an unanticipated and unwanted consequence. Conversely, four Justices dissented, holding that *proceeds* means *gross receipts* in all circumstances. *Id*. at 531. This is the pro-prosecution approach. Finally, Justice Stevens wrote separately and concluded that *proceeds* means *profits* for some predicate crimes and *gross receipts* for others. *Id.* at 525. In *Santos*, Stevens defined *proceeds* as *profits,* requiring the higher degree of proof, because holding otherwise would create a *merger* problem and there was no legislative history demonstrating this was Congress' intent. *Id*. at 528. The plurality, led by Scalia, attempted to limit the impact of Steven's concurrence by explaining that they believe the holding to be "'proceeds' means 'profits' where there is no legislative history to the contrary."[5] *Id.* at 523.

The Sixth Circuit has adopted Justice Steven's "interpretive approach" as was first explained in *United States v. Kratt*:

> "[P]roceeds" … means profits only when the § 1956 predicate offense creates a merger problem that leads to a radical increase in the statutory maximum sentence and only when nothing in the legislative history suggests that Congress intended such an increase. Whenever a predicate offense satisfies this narrow rule, the Justices in the plurality would hold "proceeds" means profits as well, because they would define "proceeds" as profits for every predicate offense.

---

[5]     The controlling authority in a plurality decision is the opinion on the narrowest grounds. *Marks v. United States*, 430, 188 193 (1977).

579 F.3d 558, 562 (6th Cir. 2009)[6]; *see also United States v. Crosgrove*, 637 F.3d 646 (6th Cir. 2011).  In the Sixth Circuit, *Santos* is applied retroactively.  *Wooten v. Cauley*, 677 F.3d 303, 309 (6th Cir. 2012).  In summary, under the *Santos/Kratt* framework, for a "profits" definition of proceeds to apply there must be (1) merger, (2) a radical increase in the statutory penalty and (3) no contrary legislative history suggesting Congress intended such an increase in penalty.  If these three conditions are not present then the proper definition to apply is that of *gross receipts*.  Based on this framework, *Santos* does not present a problem for the current prosecution.

First, this case does not present a merger problem because the defendants were not charged with both the predicate offense of *Transportation of stolen vehicles* in violation of 28 U.S.C. § 2312 and *Money Laundering* in violation of 18 U.S.C. § 1956. The Defendants do not believe that this matters.  They argue that the Sentencing Guidelines support their view that a Defendant must "be convicted of a predicate offense before he can be guilty of money laundering."  [R. 719 at 1; R. 850 at 32, Apr. 28 Tr.] This argument is erroneous.

The Fifth Circuit recently considered this exact question of "whether there is a merger problem under the money-laundering statute where a defendant was not charged with the specified unlawful activity."  *United States v. Lineberry,* 702 F.3d 210, 218 (5th Cir. 2012) cert. denied, 133 S. Ct. 2839 (U.S. 2013).  The issue was of first impression for the Fifth Circuit which ultimately concluded that a merger issue does not arise when the Defendant is not charged with both the underlying unlawful activity and the money

---

[6]     *Kratt* is a case brought under 18 U.S.C. § 1957 although the Sixth Circuit has subsequently applied the Santos/Kratt analysis to cases brought under 18 U.S.C. § 1956.  *See Buffin v. United States*, 513 F. App'x 441 (6th Cir. 2013) cert. denied, 134 S. Ct. 422 (U.S. 2013); *Jamieson v. United States*, 692 F.3d 435 (6th Cir. 2012).

laundering offense because it does not present the "'perverse result' of the merger problem as contemplated by *Santos*." *Id.* at 218 (additional citations omitted). The Court pointed out that when a defendant is only charged with money-laundering, there is simply no possibility of double jeopardy. *Id.* To further justify its position, the *Lineberry* Court referred to the definition of criminal merger in *Black's Law Dictionary*: "[t]he absorption of a lesser included offense into a more serious offense *when a person is charged with both crimes*, so that the person is not subject to double jeopardy." Black's Law Dictionary (9th ed. 2009) (emphasis added).

While the Sixth Circuit has not confronted this issue directly, its merger analysis has similar focused on avoiding the same "perverse result[s]," as were discussed in both *Lineberry* and *Santos*. *See Wooten*, 677 F.3d at 311. Those concerns are not present here. As discussed above, because the Defendants were only charged with money laundering, there is no concern that the same conduct is being used to convict them of two statutes.

Finally, the Defendants have presented no case where a Defendant was charged only with money laundering and a *Santos* violation was found to arise. This conclusion is further supported by a survey of Sixth Circuit cases considering the merger issue. In all Sixth Circuit cases where the *Santos* merger issue has been considered, the Defendant has been charged separately with both a predicate offense and money laundering. *See United States v. Santos*, 553 U.S. 507 (2008) (Defendant charged with both promotion money-laundering under § 1956 and with predicate offenses of operating an illegal gambling business); *Buffin v. United States*, 513 F. App'x 441 (6th Cir. 2013) cert. denied, 134 S. Ct. 422 (U.S. 2013) (Court considered whether conviction of concealment money-

laundering merged with predicate offense of mail fraud, of which he was also charged.); *Jamieson v. United States*, 692 F.3d 435 (6th Cir. 2012) (Defendants charged with both promotion and concealment money-laundering and also with predicate offense of mail fraud.); *United States v. Skinner*, 690 F.3d 772 (6th Cir. 2012) cert. denied, 133 S. Ct. 2851 (U.S. 2013) (Defendant charged with both conspiracy to commit money-laundering and predicate offense of either conspiracy to Distribute and Possess with Intent to Distribute 1,000 Kilograms or More of Marijuana or Aiding and Abetting in the Attempt to Distribute in Excess of 100 Kilograms of Marijuana.); *Wooten v. Cauley*, 677 F.3d 303 (6th Cir. 2012) (Defendant convicted of both promotion money-laundering in violation of § 1956 and predicate offense of interstate transportation of stolen goods, in violation of 18 U.S.C. § 2314.); *United States v. Crosgrove*, 637 F.3d 646 (6th Cir. 2011) (Court reversed conviction after finding merger problem when Defendant was convicted of both conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h) and the predicate offense of conspiracy to commit mail fraud, in violation of 18 U.S.C. § 371); *United States v. Kratt*, 579 F.3d 558 (6th Cir. 2009) (Defendant charged with money-laundering in violation of § 1957 and predicate offenses of bank fraud and making false statements.)  Put another way, the Court is not aware of any case where the Defendants were only convicted of money-laundering, but not convicted of any predicate offense, and a merger problem was then found to invalidate the conviction under the principles espoused in *Santos*.

Second, there is no merger problem because Defendants would not necessarily be convicted of money laundering even if they were (they were not) convicted of the predicate offense of transporting stolen vehicles.  To prove the predicate offense, the

13

Government must prove: (1) a Defendant transported a vehicle in interstate commerce and (2) knew that vehicle to be stolen.  18 U.S.C.A. § 2312.[7]  The elements of concealment money laundering are: "(1) use of funds that are proceeds of unlawful activity; (2) knowledge that the funds are proceeds of unlawful activity; and (3) conducting or attempting to conduct a financial transaction, knowing that the transaction is designed in whole or in part to disguise the nature, location, source, ownership, or control of the proceeds."  *Buffin*, 513 F. App'x at 447 (*citing United States v. Baltimore,* 482 Fed.Appx. 977, 983 (6th Cir. 2012) (*citing* 18 U.S.C. § 1956(a)(1)(B)(I); *United States v. Prince,* 214 F.3d 740, 747 (6th Cir. 2000))).

A conviction on the above described predicate offense does not automatically result in a money laundering conviction because the money-laundering charge requires that additional elements be proven.  Specifically, the predicate offense of transporting a stolen vehicle does not require proof of a *financial transaction* (titling the bikes in this case) whereas money laundering does.  *See United States v. Payton*, 437 F. App'x 241, 243 (4th Cir. 2011) ("An actual financial transaction is not an element of Payton's drug conviction.  Thus, the offenses do not merge, and *Santos* is inapplicable to Payton's claims."); *see also United States v. Webster*, 623 F.3d 901, 906 (9th Cir. 2010) (Court concluded that predicate drug crimes of which Defendant had also been convicted did

---

[7]     Defendants suggest in their briefing [R. 794 at 22] that the more appropriate predicate offense is 18 U.S.C. § 2313 which criminalizes the *Sale or receipt of stolen vehicles*:

> Whoever receives, possesses, conceals, stores, barters, sells, or disposes of any motor vehicle, vessel, or aircraft, which has crossed a State or United States boundary after being stolen, knowing the same to have been stolen, shall be fined under this title or imprisoned not more than 10 years, or both.

18 U.S.C. § 2313.  Even if this statute were the accurate predicate offense there is still no error because § 2313 does not require proof of a financial transaction and so it cannot merge with concealment money laundering.  A conviction on the predicate offense does not automatically result in a money laundering conviction.

"not merge with the money laundering crimes, because the drug crimes need not involve the exchange of money.")  Also absent from the predicate offense is any requirement that evidence of concealment be shown as is required in proving the money laundering charge.  *See Buffin*, 513 F. App'x at 447; *see also United States v. Hosseini*, 679 F.3d 544, 552 (7th Cir. 2012) cert. denied, 133 S. Ct. 623 (U.S. 2012) and cert. denied, 133 S. Ct. 774 (U.S. 2012) ("[T]he merger problem dissipates when the government alleges that the defendant specifically entered into a transaction to conceal the source or nature of ill-gotten gains.")

Because there is no *merger* problem, it is unnecessary to consider the remaining *Kratt* factors:  whether there is a radical increase in the statutory penalty and whether there is any legislative history suggesting Congress intended such an increase in the penalty.  *Kratt,* 579 F.3d at 562.  Ultimately, because there is no merger problem, the Government was not required to prove more than "gross receipts" which is the default definition of proceeds.  As such, *Santos* was not violated and there is no error.

**2**

The Defendants' remaining challenges attack the sufficiency of the indictment.  A criminal defendant's "right to be informed of the charges brought against him" is guaranteed by the Sixth Amendment's Notice Clause.  *United States v. Superior Growers Supply, Inc.*, 982 F.2d 173, 176 (6th Cir. 1992) (*citing Russell v. United States,* 369 U.S. 749, 761 (1962)).  In practice this requires that "[t]he indictment ... shall be a plain, concise and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1).  The Supreme Court requires the following of an indictment:

15

first, that it contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, that it enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.

*United States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007) (quoting *Hamling v. United States*, 418 U.S. 87, 94 (1974)); *see also United States v. Cor-Bon Custom Bullet Co.*, 287 F.3d 576, 579 (6th Cir. 2002).  "'[T]he requirement that an indictment allege all of the elements of the offense charged ... seeks primarily to ensure that an accused is reasonably informed of the charge made against him so that he can prepare a defense.'" *Williams v. Haviland*, 467 F.3d 527, 535 (6th Cir. 2006) (quoting *Cor-Bon Custom Bullet Co.,* 287 F.3d at 580).

While "[t]he sufficiency of an indictment is reviewed de novo," *United States v. Gibson*, 409 F.3d 325, 331 (6th Cir. 2005) (*citing United States v. Gatewood,* 173 F.3d 983, 986 (6th Cir. 1999)), when the indictment is challenged "for the first time after the defendant has been convicted, the indictment is 'construed liberally in favor of its sufficiency.'"[8] *Id.*  (quoting *United States v. Gibson,* 513 F.2d 978, 979 (6th Cir. 1975)). "[U]nless the defendant can show prejudice, a conviction will not be reversed where the indictment is challenged only after conviction unless the indictment cannot within reason be construed to charge a crime."  *United States v. Gatewood*, 173 F.3d 983, 986 (6th Cir. 1999) (quoting *United States v. Hart,* 640 F.2d 856, 857 (6th Cir. 1981) (internal citations omitted)).

---

[8]     The Court notes that this is not the first time the Indictment has been attacked in this case.  It is, however, the first time that the Defendants have attacked the Indictment on these grounds.  Before trial the Defendants moved to dismiss the Indictment alleging that the behavior being prosecuted took place outside the statute of limitations.  The Court denied these motions in an Order dated December 5, 2012.  *See* R. 402.

**a**

Count 1 of the Superseding Indictment provides that from January 2000 until February 2008, Defendants were involved in a conspiracy to commit money laundering through the theft and transaction of stolen motorcycles in violation of 18 U.S.C. § 1956(h).  [R. 157 at 1-2.]  The Indictment alleges that the Defendants:

> did conspire together and with others to knowingly conduct and engage in financial transactions in *criminally derived property*, affecting interstate commerce, which, as known by the defendants, involved the proceeds of a specified unlawful activity, that is interstate shipment of stolen vehicles, knowing the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(B)(i), all in violation of 18 U.S.C. § 1956(h).

[R. 157-1 at 3 (emphasis added).]  Defendants take issue with the fact that the Government used the term "criminally derived property," which is borrowed from 18 U.S.C. § 1957,[9] the sister statute to § 1956, when they should have used language from § 1956 which refers to property that "represents the proceeds of some form of unlawful activity."  18 U.S.C. § 1956.  The Government concedes this is error and attributes the mistake to the use of an improper form document (or "go by") but nevertheless maintains that it should not result in a reversal of the conviction.[10]  [R. 850 at 41, Apr. 28 Tr.]  First, the Government argues that because Count 1 charges Conspiracy to Launder Money under § 1956(h),  as opposed to substantive Money Laundering, that they are only

---

[9]      The parties disagree as to the source of the term "Criminally Derived Property."  [R. 850 at 36-40, Apr. 28 Tr.]  The Government argues that it was mistakenly borrowed from 18 U.S.C. § 1957, where it has been present since amendments made to that statute in 1986.  [*Id*. at 42].  The Defendants argue that it was an attempt by the Government to incorporate language from the 2009 Fraud Enforcement and Recovery Act (FERA) Amendments to 18 U.S.C. § 1956 into an Indictment charging a crime that happened earlier, despite the fact that FERA is not retroactive.  [R. 711-2 at 3.]  *See Wooten*, 677 F.3d at FN1 (6th Cir. 2012).

[10]      The Government is quick to point out that because this objection only reaches Count 1 of the Indictment, such a reversal on this ground would only vacate the Defendants' conviction as to Count 1.  [R. 850 at 33-34, Apr. 28 Tr.]

17

required to name the two elements necessary to prove a violation of 18 U.S.C. § 1956(h).

[R. 850 at 41, Apr. 28 Tr.]  Second, the Government maintains that the two terms

"address exactly the same property" and are, effectively, interchangeable.  Defendants

argue that because the charge does not fairly state an offense under § 1956, it must be

vacated.  [R. 850 at 35, Apr. 28 Tr.]

    First, this Court has previously addressed, in this very case, what exactly is

required to convict under 18 U.S.C. § 1956 (h):

> To convict a defendant of conspiracy to commit money laundering under § 1956,
> the United States is required to prove "(1) that two or more persons conspired to
> commit the crime of money laundering, and (2) that the defendant knowingly and
> voluntarily joined the conspiracy." *United States v. Garcia,* 259 Fed.Appx. 747,
> 750 (6th Cir.2008). The United States is not, however, required to prove that the
> defendant committed an overt act in furtherance of the conspiracy. *See Whitfield
> v. United States,* 543 U.S. 209, 214 (2005) (explaining that "the Government need
> not prove an overt act to obtain a conviction" under § 1956(h)); *United States v.
> Mustek,* 291 Fed.Appx. 706, 715 (6th Cir. 2008) (noting that no overt act must be
> proved under *Whitfield* ). Rather, the United States need only show that the
> defendant "agreed with another person to violate the substantive provisions of the
> money-laundering statute during the period alleged in the indictment." *Hynes,* 467
> F.3d at 964.

[R. 402 at 4.]  The Indictment was required to "contain[] the elements of the offense

charged."  *Resendiz-Ponce*, 549 U.S. 102, 108 (2007) (quoting *Hamling*, 418 U.S. 94).

Because the crime charged was conspiracy, the Indictment only had to allege "(1) that

two or more persons conspired to commit the crime of money laundering, and (2) that the

defendant knowingly and voluntarily joined the conspiracy."  *Garcia,* 259 Fed.Appx at

750.  This frames the ultimate question:  despite the Government's use of the term

"criminally derived property," did the Indictment effectively allege that the Defendants

"conspired to commit the crime of money laundering" in violation of 18 U.S.C. § 1956?

    The answer to this question hinges on whether the two terms are in fact different

legal concepts or just different ways of describing the same property.  The Government

conceded as much in the hearing, stating "[i]f the court thinks these are legally different things, then there is a problem." [R. 850 at 39, Apr. 28 Tr.] The definitions of the two terms as they existed at the time of the alleged crime shed some light on this question. 18 U.S.C. § 1956 (c)(1) establishes that:

> the term "knowing that the property involved in a financial transaction **represents the proceeds of some form of unlawful activity**" means that the person knew the **property** involved in the transaction **represented proceeds from some form**, though not necessarily which form, **of activity that constitutes a felony under State, Federal, or foreign law**…

18 U.S.C. § 1956 (Effective: March 9, 2006 to September 30, 2008) (emphasis added). At the same time, 18 U.S.C. § 1957(f)(2) defined "criminally derived property" as "any property constituting, or derived from, proceeds obtained from a criminal offense." 18 U.S.C. § 1957. Is there any practical difference between property that "represents the proceeds" of unlawful activity (as termed in § 1956) and "property constituting or derived from proceeds" of unlawful activity (as stated in § 1957)?

The Government submits that because "proceeds" is defined identically in both §§ 1956 and 1957, *see Kratt,* 579 F.3d at 560, that this Court should find that the two above-discussed terms also have identical meanings. This argument, however, is unpersuasive. The Kratt Court was presented with the very different question of whether the same word should be given an identical meaning in two statutes rather than whether different terms should be identically defined. Despite this obvious difference, some of what *Kratt* says is still useful: § 1956 and § 1957 were enacted at the same time, the statutes criminalize similar behavior and they also cover the same predicate offenses. *Kratt,* 579 F.3d at 560-561. The Court's ultimate determination, however, is not rested on these factors. The Court is persuaded that the two terms do mean the same thing – they both refer to property that may be traced back to proceeds of criminal activity. While the Court

19

understands the Defendant's structural arguments regarding the framing of this charge, and the Government concedes it is a mistake, the Court is unable to draw a practical distinction between these terms.

The Court is further persuaded this is the correct decision because the Defendants were fairly informed of the charges they were tasked with defending.  First, in addition to the money laundering conspiracy charge, the Defendants were also charged with multiple counts of money laundering, which properly outlined the 18 U.S.C. § 1956 elements.  As a whole, the Indictment clearly explains what must be proved to be convicted under § 1956 and places the Defendants on notice of what is necessary to defend against a charge of concealment money laundering in violation of § 1956.  Second, as the Government points out, the jury instructions got the wording right.  *See* R. 707 at 14, Jury Instructions. Third, the Court also notes that the Defendants filed Motions to Dismiss that directly attacked the indictment (although on other grounds) before trial.  Apparently, Defense Counsel did not identify these issues at that time—lending even more support to the argument that the error was harmless.

As has been demonstrated, despite the Government's admitted error, the indictment placed the Defendants on notice of the charges against them.  For all the aforementioned reasons and because an indictment should be "construed liberally in favor of its sufficiency" when it is attacked for the first time post-conviction, *Gibson*, 409 F.3d at 331, the Court holds that Defendants attacks on Count 1 of the indictment must be overruled.  "To hold otherwise would be to hold the government 'to such strictness of averments as might defeat the ends of justice.' " *Cor-Bon Custom Bullet Co.,* 287 F.3d at 581 (quoting *Lott v. United States*, 309 F.2d 115, 118 (5th Cir. 1962)).

**b**

Meade argues that the specified unlawful activity (SUA) alleged "throughout the entire indictment," the interstate shipment of stolen vehicles, is in fact not a SUA as defined by 18 U.S.C. § 1957 (c)(7).  [R. 711-2 at 5.]  He accuses the Government of "deliberately not identify[ing] a statute" associated with the SUA and argues that the Government failed to properly convey 18 U.S.C. § 2312's knowledge component in the indictment.  [*Id.*]

First, the "interstate shipment of stolen vehicles" (as stated in the indictment) or the "Transportation of stolen vehicles" (as stated in 18 U.S.C. § 2312) is a proper SUA. § 1956(c)(7)(A) states that "any act or activity constituting an offense listed in section § 1961(1) of this title qualifies as a SUA."  18 U.S.C. § 1956(c).  "Racketeering activity" is defined within § 1961(1) as, amongst many other things, "any act which is indictable under… sections 2312 and 2313 (relating to interstate transportation of stolen motor vehicles)."  18 U.S.C. § 1961(1).   The Defendant cites to no case indicating that the Government was required to identify the SUA by specific reference to its statute.

Finally, the Defendants argue that 18 U.S.C. § 2312[11] imposes a knowledge requirement that was not properly conveyed in the Indictment. [R. 711-2 at 5.]  The Government contends that it is not necessary for a money laundering indictment to plead all elements of the SUA.  [R. 717 at 8.]  In their briefing, the Government cites to *U.S. v. Bitzur,* where the Court held that a money laundering indictment need not detail the elements of the charged SUA.  1996 WL 665621 (S.D.N.Y. 1996).  Rather, the Court concludes that "the elements of [the SUA] are ancillary to--rather than the 'core of

---

[11]      The statute prohibits the "transport[] in interstate…commerce [of] a motor vehicle… **knowing the same to have been stolen**."  18 U.S.C. § 2312 (emphasis added)

criminality' of--the money laundering charge." *Id.* That Court explains that the government will still be bound to prove at trial "that the proceeds were obtained 'with the intent to promote the carrying on of' a violation" of the SUA but that such a "showing is a matter of proof, not of the indictment's sufficiency." *Id.*

The Court agrees that the knowledge component in the SUA need not be included in the Indictment. As has already been noted:

> An indictment adequately charges an offense if it (1) includes the elements of the offense intended to be charged, (2) notifies the defendant of "what he must be prepared to meet," and (3) allows the defendant to invoke a former conviction or acquittal in the event of a subsequent prosecution.

*Cor-Bon Custom Bullet Co.*, 287 F.3d at 579 (citations omitted). The Defendants were charged with money laundering violations rather than violations of 18 U.S.C. § 2312. As such, the elements that had to be presented were those of money laundering, not the SUA.

A similar sentiment has been expressed by the Sixth Circuit in a discussion about whether a Defendant need know whether the unlawful activity referenced in the money laundering charge was a felony or a misdemeanor. While that particular question is not relevant, the Court's conversation sheds some light on the level of detail that must be included:

> [S]ection 1956 focuses on the crime of money laundering and the attempt to launder dirty money; not the underlying criminal activity that produced the dirty money. "Why and how that money got dirty is defined in other statutes. .... The crime is the same: money laundering; the particular underlying activity specified by Congress is a necessary, but ancillary concern...."

*United States v. Hill*, 167 F.3d 1055, 1067 (6th Cir. 1999) (quoting *United States v. Maher,* 108 F.3d 1513 (2nd Cir.1997) (internal quotes and citations omitted)); *see also United States v. Caldwell*, 302 F.3d 399, 412 (5th Cir. 2002) (quoting *United States v.*

*Crippen,* 579 F.2d 340, 342 (5th Cir. 1978) (The indictment need not "allege in detail the factual proof that will be relied upon to support the charges.").

### III

In light of the above arguments and the Court's obligation to construe the indictment liberally when arguments attacking the indictment are raised for the first time following conviction, no relief is merited.

**ACCORDINGLY**, and the Court being sufficiently advised, it is hereby **ORDERED** that the Defendants' Motion for Reconsideration [R. 794] is **DENIED**.

This 14th day of April, 2015.



Signed By:

*Gregory F. Van Tatenhove*

**United States District Judge**